UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TANYA MARIE SEMMIG,

    Plaintiff,

v.                                    Case No.:  8:23-cv-2052-KKM-NHA

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT & RECOMMENDATION**

Plaintiff challenges the May 1, 2023 denial of her claim for supplemental security income ("SSI"). On appeal, Plaintiff argues that the Administrative Law Judge ("ALJ") failed to consider Plaintiff's left knee pain in determining her residual functional capacity ("RFC"), and the Appeals Council failed to properly consider new evidence: the results from an MRI of Plaintiff's knee. Doc. 22. Having reviewed the parties' briefing and the record below, I find the ALJ's decision was based on substantial evidence and employed proper legal standards, and that the new evidence did not necessitate remand. I recommend the decision be affirmed.

    **I.**    **Procedural History**

Plaintiff applied for SSI on March 17, 2021, alleging her disability began January 1, 2019, and included complaints specific to her back (degenerative

1

disc disease and lumbar pain), as well as arthritis. R. 198–204, R. 223. The Commissioner denied Plaintiff's claims at the initial level (R. 86) and upon reconsideration (R. 99).

Plaintiff then requested an administrative hearing. R. 124. The ALJ conducted a hearing on December 20, 2022, at which both Plaintiff and a vocational expert testified. R. 40–78. Plaintiff testified that she sometimes felt that her knees would not allow her to stand up and that her left knee "feels like it's going to pop out to the left" when she walks. R. 66. Plaintiff also testified that she experienced shooting pains in her legs. *Id.*

Following the hearing, and after review of the record, the ALJ found that Plaintiff was not disabled and denied Plaintiff's claims for benefits. R. 11–22. The ALJ found that Plaintiff did have severe impairments, specifically, bipolar disorder, spine disorders, and anxiety. R. 13. Notwithstanding the noted impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14.

For Plaintiff's residual functional capacity—that is, the most that the Plaintiff could do despite her impairments—the ALJ concluded that Plaintiff

2

could perform the light work as defined in 20 C.F.R. 416.967(b)[1] with the following additional limitations: She could perform only simple, routine tasks, meaning those tasks that the Dictionary of Occupational Titles lists as a specific vocational preparation ("SVP") level 1 or 2 (tasks not requiring significant training),[2] and could make only simple work-related decisions; she could only maintain attention, concentration, persistence, and pace in 2-hour increments throughout an 8-hour day with normal work breaks; and she could not perform fast-paced or strict quota based work. R. 16. Further, she could only occasionally lift, carry, push or pull up to 20 pounds, and occasionally climb ladders, ropes, or scaffolds. *Id.* However, she could frequently lift, carry, push, or pull up to 10 pounds, and frequently climb ramps and stairs and stoop, and frequently be exposed to unprotected heights, moving mechanical parts,

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 416.967(b)

[2] An SVP 1 involves training through a short demonstration only, while an SVP of 2 is anything beyond short demonstration up to and including 1 month. Appendix C - Components of the Definition Trailer, Dictionary of Occupational Titles, 1991 WL 688702. SVP 1 and 2 corresponds with the definition of unskilled work. *See* SSR 00–4P.

and vibration. *Id.* She could also sit, stand, or walk for a period of 6 hours each. *Id.*

In reaching her opinion, the ALJ noted that Plaintiff "indicated that she has pain in her lower back radiating to her hips, legs, and shoulders" and that "the pain worsens with standing, walking, lifting, bending, twisting, and pulling." R. 17. However, the ALJ discounted Plaintiff's subjective complaints, because: Plaintiff "improv[ed] with pain medications," "had no more than mild range of motion abnormalities," and was able to "perform activities of daily living such as car[ing] for herself and preparing simple meals." *Id.*

The ALJ also expressly considered Plaintiff's medical records concerning her back pain, which the ALJ noted radiated down Plaintiff's left leg at times. R. 18. The ALJ mentioned that Plaintiff's physicians recommended conservative treatment, that Plaintiff reported relief with pain medication, that she walked with a symmetric steady gait and without a cane or walking stick, could rise from a sitting position without assistance, and could walk on her heels and toes. R. 18–19.

The ALJ concluded that Plaintiff could not perform any of her past relevant work as an informal server (R. 20), but that she could perform other work that exists in substantial numbers in the national economy, including the jobs of bagger, small products assembler, and marker. R. 21. Accordingly,

4

based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff was not disabled. R. 22.

Plaintiff appealed the ALJ's decision to the Appeals Council. On appeal, Plaintiff submitted five pages of medical records from Tower Imaging dated March 31, 2023 through May 8, 2023. R. 2 (referencing records at R. 35–39). The records include results from an MRI of Plaintiff's left knee, finding that Plaintiff suffered from "mild to moderate patellofemoral chondromalacia"[3] and had a small Baker's cyst[4]. R. 36, 39. The Appeals Council did not find the submission created "a reasonable probability that it would change the outcome of the decision." R. 2. Accordingly, it denied the appeal. R. 1–7.

---

[3] According to the Cedars-Sinai health library, "chondromalacia patella is a common condition causing pain in the kneecap. The patella is covered with a layer of smooth cartilage, which normally glides across the knee when the joint is bent. The pain is caused by an irritation of the undersurface or patella of the kneecap as the kneecap rubs against one side of the knee joint, irritating the cartilage surface." *Chondromalacia*, CEDARS-SINAI HEALTH LIBRARY, https://www.cedars-sinai.org/health-library/diseases-and-conditions/c/chondromalacia.html. "Symptoms of chondromalacia include knee tenderness and pain that increases after sitting for a prolonged period of time, using stairs or getting out of a chair." *Id*. Regarding treatment, "Unlike the damage to cartilage caused by arthritis, damage caused by chondromalacia can often heal. Conservative treatment is usually recommended first since rest and physical therapy may eliminate the symptoms." *Id*.

[4] According to the Cedars-Sinai health library, "A Baker cyst is a fluid-filled sac that forms behind the knee" and is usually related to other knee issues, including a cartilage tear. Baker's Cyst, CEDARS-SINAI HEALTH LIBRARY, https://www.cedars-sinai.org/health-library/diseases-and-conditions/b/bakers-cyst.html. "They usually don't cause major problems." *Id*.

5

Plaintiff timely filed a complaint with this Court seeking to reverse the denial. Compl. (Doc. 1). Plaintiff argues that the ALJ erred in failing to account for Plaintiff's left knee pain, and the Appeals Council erred by failing to remand the case to the ALJ in light of the MRI results. Doc. 22. The Commissioner responded (Doc. 26). Plaintiff did not file a reply. The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. The Record

Plaintiff, who was born in 1981, completed ninth grade and has limited prior work experience as a server. R. 198, 224. She stopped working in 2008 (R. 224), and claims she became disabled in January 2019 (R. 220). She alleged her disability was caused by both mental conditions (bipolar disorder, anxiety, and depression) and physical conditions (degenerative disc disease, allergies, lumbar pain, and arthritis). R. 223.

The only facts relevant to the appeal are those relating to Plaintiff's left knee pain—which she did not specifically list on her disability application but about which she testified—and the limitations caused by that pain.

The medical records, which span from 2018 to 2023, show that, in her frequent visits to her doctor for her back and shoulder pain,[5] Plaintiff

---

[5] For example, in 2022, Plaintiff saw her providers concerning these issues in February (R. 755, 774), April (R. 801), August (R. 875), and December (R. 877).

6

complained about back pain spreading to her legs on a handful of occasions[6] but only ever specifically reported knee pain to her treating providers twice. First, in November 2018—prior to when she claims she became disabled—Plaintiff reported that she suffered from chronic left knee pain and stated that her knee occasionally buckled. R. 544. In February 2019, she walked with a limp and reported that she felt like her knee was "going to blow off," was weak, and buckled. R. 525, R. 527. Plaintiff was never diagnosed with any condition specific to her knee;[7] rather, her physician diagnosed her with "back pain with left-sided radiculopathy" (meaning the pain from her back was radiating to her left leg). R. 528; *see also* R. 508 (same diagnosis). Likewise, physical examinations showed that Plaintiff had few leg limitations. In August 2021, a consultative examiner noted,

> Patient was able to squat and rise from that position with difficulty. Patient was able to rise from a sitting position without assistance and had difficulty getting up and down from the exam table. The patient was able to walk on heels and toes. Tandem walking was normal. The patient could stand but not hop on one foot bilaterally.

---

[6] In March 2020, Plaintiff visited the emergency room complaining about lower back pain that radiated down her left leg and into her calf, which was diagnosed as a lumbar muscle strain. R. 496–500; *see also* R. 757 (reporting in October 2021 that pain in her back goes down her left leg periodically). And in June and October 2021, in a pain questionnaire, Plaintiff reported that the pain from her lower back moved to her legs. R. 241, 261.

[7] Although Plaintiff reported to a consultative examiner that she had suffered from arthritis in her knee for years (R. 818), this diagnosis is not found in the medical records before the ALJ, nor in Plaintiff's 2023 MRI (R. 39).

7

R. 420. Additionally, Plaintiff "had a symmetric, steady gait" without the use of an assistive device (a cane or walking stick). R. 414. Her gait was also normal in January 2022.[8] R. 702. And, in June 2022, during another consultative examination, she was able to get on and off the examination table, albeit with difficulty, had a normal gait, and was able to stand and walk on both her heels and her toes. R. 821, 823.

Additionally, Plaintiff reported to her providers that her medications were helping with her pain generally. In February 2022, Plaintiff specifically reported that her left leg sciatica remained under control with her medications. R. 753; *see also* R. 875 (reporting Plaintiff was doing "fairly well" with current regimen). And, in April 2022, Plaintiff's provider noted that she suffered from back pain, and with pain in her legs at times, but that the medications were helping. R. 742.

Following the ALJ's denial of her claim for SSI, Plaintiff underwent an MRI of her left knee that revealed mild to moderate patellofemoral chondromalacia and a small Baker's cyst.[9] R. 36, 39. Plaintiff submitted the

---

[8] There are references to an abnormal gait in the record related to flare-ups in back pain. *See, e.g.,* R. 517 (In April 2019, Plaintiff presented to her doctor with severe back pain and walked with a shuffling, protective gait); *see also* R. 522 ("back pain and gait problem" also in April 2019).

[9] *See supra* notes 3 and 4 (defining these terms).

records to the Appeals Council and requested remand on that basis. Plaintiff's request was denied. R. 2.

### III. Standard of Review

The Court reviews the ALJ's decision with deference to its factual findings, but no such deference to its legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002) ("With respect to the Commissioner's legal conclusions, . . . our review is *de novo*."). The Court must uphold a determination by the Commissioner that a claimant is not disabled if the determination is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is merely "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curium)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the

9

ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

That said, the ALJ must state the grounds for her decision with enough clarity to enable the Court to conduct meaningful review of the standards she employs. *See Keeton*, 21 F.3d at 1066 (we must reverse when the ALJ has failed to "provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted"); *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984).

To the extent a claimant submits new evidence after the ALJ's decision, the "determination of whether new evidence renders appropriate a remand to the [ALJ] is a *de novo* proceeding." *Hyde v. Bowen*, 823 F.2d 456, 458–59 (11th Cir. 1987) (citations omitted). Ultimately, "to prevail on a claim that remand is appropriate, a claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level." *Id.* at 459 (citations and internal quotations omitted).

Finally, in making its decision, the Court must review the entire record. *Id.* at 1514; *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citing *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987)).

IV. **Analysis**

On appeal, Plaintiff makes two arguments: (1) the ALJ erred by failing to consider Plaintiff's left knee pain in determining her RFC, and (2) the Appeals Council erred by failing to remand Plaintiff's case to the ALJ in light of new evidence (the MRI of Plaintiff's knee). Doc. 22.

> *A. The ALJ Properly Considered Plaintiff's Functional Limitations from Her Left Knee Pain.*

Plaintiff first argues that the ALJ failed to consider her testimony concerning her knee pain and the limitations related to it, including that she experienced shooting pains, and that she sometimes felt like her knees would not allow her to stand up and that her left knee was "going to pop out to the left" when she walked. Pl. Br. (Doc. 22) at pp. 3–5 (citing R. 66). Plaintiff points to medical evidence in the record that Plaintiff complained of knee pain in November 2018, February 2019, and March 2020 and, on this last occasion, that her treating provider noted swelling in her left leg. Pl. Br. (Doc. 22) at p. 4 (citing R. 316, 355, and 525). She claims that "it cannot be inferred that the ALJ considered Plaintiff's knee complaints," and asserts that the ALJ's failure to expressly address it constituted legal error necessitating remand. Pl. Br. (Doc. 22) at p. 5.

An RFC is the most that a claimant "can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must assess the RFC based on

11

all of Plaintiff's impairments—both severe and non-severe—and should consider "all of the relevant medical and other evidence," including but not limited to, medical evidence and opinions, as well as "descriptions and observations of [a claimant's] limitations . . . including limitations that result from [a claimant's] symptoms, such as pain," as described by the claimant. *Id.* § 416.945(a)(2)–(3). In forming the RFC, an ALJ may discredit a claimant's subjective complaints. *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005). However, the ALJ must articulate "explicit and adequate reasons for doing so." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

I find that, although the ALJ did not specifically use the term "knee" in her decision, a review of the decision makes clear that she considered Plaintiff's leg pain and limitations caused by any impairments related to her leg.

First, the ALJ referenced Plaintiff's complaints of leg pain and her claimed limitations from the leg pain. R. 17 ("In [pain] questionnaires, the claimant indicated that she has pain in her lower back radiating to her hips, legs, and shoulders. She further reported that the pain worsens with standing, walking, lifting, bending, twisting, and pulling."); *see also* R. 18 (noting her report to a doctor that "the [back] pain was going down her left leg at times").

Second, the ALJ referred to medical records that discussed Plaintiff's limitations in standing and walking, including (1) an August 2021 consultative examination at which Plaintiff had a symmetric, steady gait, did not use an

assistive device, was able to rise from a sitting position without assistance and could walk on her heels, her toes, and in steps that place the heel of one foot immediately adjacent to the toes of the other (R. 18); and (2) a June 2022 consultative examination at which Plaintiff again was able to stand and walk on her heels and toes (R. 19). *See also* R. 20 (noting that the findings in the initial consultative examination that Plaintiff is able to rise from a sitting position without assistance is consistent with the record)).

Third, the ALJ discussed normal examination findings related to Plaintiff's legs, including that, in August 2021 and June 2022, she had normal muscle strength in her lower extremities. R. 18–19.

Finally, the ALJ noted that Plaintiff had reported to the provider treating her back and leg pain that her medications were effective, and she was doing "fairly well." R. 19; *see also* R. 18 ("[Plaintiff] also saw improvement with pain medications and reported that she was doing well during more recent physical examinations.").

Citing this evidence, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 18. The ALJ then concluded Plaintiff could perform light work with additional limitations,

13

including that she could only occasionally lift, carry, push or pull up to 20 pounds, or climb ladders, ropes, or scaffolds. *Id.* But, she could frequently lift, carry, push or pull up to 10 pounds; could frequently climb ramps and stairs and stoop; and could sit, stand, or walk each for a period of 6 hours. R. 16.

Because the ALJ noted Plaintiff's leg-pain complaints, cited medical records concerning Plaintiff's leg strength and ability to stand and walk, and remarked on Plaintiff's positive response to pain treatment, I find that the ALJ properly considered, and explained his basis for discounting, limitations associated with Plaintiff's left knee pain in determining Plaintiff's RFC. I recommend that the district court affirm the ALJ's opinion.

> *B. The Appeals Council did Not Err by Failing to Remand Based on the MRI results.*

Plaintiff also argues that the Appeals Council erred failing to remand the case to the ALJ after Plaintiff submitted new evidence, specifically, imaging of Plaintiff's left knee revealing mild to moderate chondromalacia and a small Baker's cyst.[10] Pl. Br. (Doc. 22) at pp. 5–6; *see also* R. 2 (decision by Appeals Council, referencing records at R. 35–39). Plaintiff avers that the new evidence was material, meaning that there is a reasonable possibility it would have changed the ALJ's determination of Plaintiff's RFC, and that the Appeals

---

[10] *See supra* notes 3 and 4 (defining terms).

14

Council, therefore, erred by failing to remand the case to the ALJ upon Plaintiff's submission of the MRI. Pl. Br. (Doc. 22) at pp. 5–6.

Generally, a claimant is allowed to present new evidence at each stage of the administrative process, including to the Appeals Council. *See* 20 C.F.R. § 416.1470; *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council must consider "new, material" evidence that relates to the period on or before the date of the administrative law judge's hearing decision" and must review the case if "the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram*, 496 F.3d at 1261. Ultimately, "to prevail on a claim that remand is appropriate, a claimant must establish that: (1) there is new, noncumulative evidence; (2) the evidence is material, that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level." *Hyde*, 823 F.2d at 459 (citations and internal quotations omitted).

Here, I find that Plaintiff cannot meet the second factor: Plaintiff has not demonstrated a reasonable possibility that the new evidence would change the administrative result. The medical diagnosis of Plaintiff's knee condition (mild to moderate chondromalacia and a small Baker's cyst) does not, alone, establish that Plaintiff had additional limitations. *Wind v. Barnhart*, 133 Fed.

15

App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a 'deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work."); *Moore*, 405 F.3d at 1213 n.6 (fact that claimant had diagnoses does not reveal extent to which they limit ability to work or undermine ALJ's RFC determination). In other words, the fact that Plaintiff was diagnosed with mild to moderate chondromalacia and a small Baker's cyst would have no impact on the substantial evidence on which the ALJ relied to determine Plaintiff's RFC, including that Plaintiff had a steady gait, was able to rise from sitting to standing, and reported to the provider that treated her back and leg pain that her medications were effective and she was doing "fairly well." R. 17–19. If, on the other hand, the ALJ had relied on unremarkable MRI results to form Plaintiff's RFC as it pertained to her knee pain, the updated MRI would be material here. But the ALJ did not. And the facts on which she relied are unchanged by the updated MRI.

Thus, I find that Plaintiff's submission of the new MRI results did not necessitate a remand, and the Appeals Council did not err in failing to remand based on the new evidence.

## V.   Conclusion

For the reasons stated, I RECOMMEND that:

(1)   The decision of the Commissioner be affirmed; and

16

(2) The Clerk of Court enter judgment in the Defendant's favor, terminate any pending motions, and close the case.

SUBMITTED to the District Court on July 1, 2024.

*Natalie Hirt Adams*
NATALIE HIRT ADAMS
United States Magistrate Judge

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.